IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SARAH OBIDULLAH SAKHI**, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civ. No. DLB-24-1376 |
| **ANTONY J. BLINKEN**, *et al.* | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

Sarah Obidullah Sakhi and Hamed Arefi are engaged to be married. Sakhi, a U.S. citizen living in the United States, and Arefi, a non-citizen living in Afghanistan, move to compel adjudication of Arefi's nonimmigrant visa application. Arefi attended a visa interview at the U.S. Embassy at Islamabad, Pakistan in October 2023. Immediately afterwards, the Department of State refused Arefi's visa application pursuant to 8 U.S.C. § 1201(g) and placed his application in administrative processing.

More than 16 months later, Arefi's visa application remains in administrative processing. Arefi remains in Afghanistan. Sakhi remains in the United States. Arefi and Sakhi filed suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), to compel the Department of State ("State Department") to remove Arefi's application from administrative processing and issue a final adjudication on the application. The defendants have moved to dismiss the complaint. The Court grants the motion and dismisses the complaint for lack of subject matter jurisdiction.

**I.     Relevant Background**

   **A.  K Visa Process**

Before the Court discusses the plaintiffs' allegations, some background on the relevant immigration process is in order. Under the Immigration and Nationality Act ("INA"), a person

may be admitted as a nonimmigrant if they are "the fiancée or fiancé of a citizen of the United States . . . who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission." 8 U.S.C. § 1101(a)(15)(K)(i). A nonimmigrant fiancé is admitted to the United States on a "K visa," which is valid for 90 days. *See id.*; *see also Regis v. Holder*, 769 F.3d 878, 879–80 (4th Cir. 2014) (describing the K visa process).

The K visa process proceeds as follows. First, the U.S. citizen files a Form I-129F Petition for Alien Fiancé(e) ("Form I-129F") with United States Citizenship and Immigration Services ("USCIS"). 8 C.F.R. § 214.2(k)(1). If USCIS approves the Form I-129F, it remains valid for four months. *Id.* § 214.2(k)(5). Once approved, USCIS forwards the approved petition to the U.S. consulate in the applicant's home country. 22 C.F.R. § 41.81(a)(1).

Second, the applicant submits a visa application to the U.S. consulate. *Id.* §§ 41.81(a), 41.101(a)(1), 41.103(a)(1). To do so, the applicant must complete and sign a Form DS-160 Online Nonimmigrant Visa Application. *Id.* § 41.103(a)(1). The applicant also must submit supporting documentation, fees, biometric information, and a medical examination. *Id.* §§ 41.105(a)–(b), 41.107(a), 41.108(a)(1). The applicant then is interviewed by a consular officer at a U.S. consulate. *Id.* § 41.102(a).

After the interview, the consular officer determines whether to issue the visa, refuse the visa, or, pursuant to an outstanding order under INA § 243(d), 8 U.S.C. § 1253(d), discontinue granting the visa. 22 C.F.R. § 41.121(a); 8 U.S.C. § 1201. The officer must refuse the visa pursuant to INA § 221(g) if the applicant fails to meet his burden to establish eligibility for the visa. 8 U.S.C. § 1201(g). The officer must notify the applicant of the basis for the refusal. 22 C.F.R. § 41.121(b)(1). If the consular officer refuses the application, agency guidance allows the officer to accept additional information from the applicant and place the refused application in

administrative processing for further consideration. *See* 9 Foreign Affairs Manual ("FAM") § 306.2-2(A)(a)(2). If the consular officer issues the visa, the fiancé may travel to the United States and marry his U.S. citizen fiancée within 90 days. Once he and his fiancée are married, he may adjust his status to permanent residence. 8 U.S.C. § 1255(d).

### B. The Plaintiffs

The following allegations are taken from the plaintiffs' amended complaint and accepted as true for purposes of the motions to dismiss. *See Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

Sakhi and Arefi are an engaged couple. *Id.* ¶ 10–11. Sakhi is a U.S. citizen residing in Maryland. *Id.* ¶¶ 10–11. Arefi is an Afghan national residing in Afghanistan. *Id.* ¶¶ 11, 29. Arefi's K visa process began when Sakhi filed a Form I-129F on Arefi's behalf. *Id.* ¶ 20. On April 27, 2023, USCIS approved Sakhi's Form I-129F. *Id.* Three months later, the National Visa Center informed Sakhi that it received the approved petition and would forward it to the U.S. embassy in Islamabad. *Id.* ¶ 21. Arefi promptly submitted his Form DS-160. *Id.* ¶ 22.

On October 24, 2023, Arefi was interviewed by a consular officer at the U.S. embassy in Islamabad. *Id.* ¶ 23. At the end of the interview, the consular officer refused Arefi's application for a K visa pursuant to INA § 221(g). ECF 12, ¶¶ 4, 24; ECF 12-1, at 1. The officer asked Arefi to submit additional information, which Arefi submitted the same day. ECF 12, ¶ 24. The officer retained Arefi's passport and told him that his case was placed in administrative processing. *Id.*

Months later, the embassy returned Arefi's passport to him. *Id.* ¶ 26. Sakhi has sent the embassy several requests to finish the administrative processing of Arefi's K visa application. *Id.* ¶ 25. Despite Sakhi's requests, Arefi's application remains in administrative processing. *Id.* ¶ 27. The U.S. embassy has not provided Sakhi and Arefi with any meaningful explanation for why the

3

administrative processing has been ongoing for more than 16 months. *Id.* ¶ 28. Meanwhile, Arefi's living situation in Afghanistan is unsafe. *Id.* ¶ 29. Arefi, a medical doctor, has been unable to work since 2023 because of threats to his personal safety. *Id.* Sakhi is financially supporting Arefi. *Id.* The lengthy period of administrative processing has caused Sakhi and Arefi "significant financial and emotional hardships." *Id.*

Sakhi and Arefi filed an initial complaint on May 10, 2024, ECF 1, and an amended complaint and supplement on July 26, 2024 and July 29, 2024, respectively, ECF 12 & 14. They name as defendants Antony J. Blinken, in his official capacity as the Secretary of the U.S. Department of State; Rena Bitter, in her official capacity as the Assistant Secretary of the Bureau of Consular Affairs; Andrew Schofer, in his official capacity as the Deputy Chief of Mission at the U.S. embassy in Islamabad; and John Doe, in his official capacity as consular officer at the U.S. embassy in Islamabad. ECF 12, ¶¶ 12–15.

Sakhi and Arefi claim that the defendants' failure to issue a "final adjudication" violates the APA, 5 U.S.C. §§ 701 *et seq.* ECF 12, ¶¶ 8–9, 31–44. They allege that § 555(b) of the APA, 5 U.S.C. § 555(b), and the Foreign Relations Authorization Act of 2003, Pub. L. No. 107-228, 116 Stat. 1373 (2002), create a nondiscretionary duty for the defendants to provide Arefi with an adjudication of his visa application in a timely manner. ECF 12, ¶¶ 8, 33, 37. They request that the Court "enter an order mandating a time certain for the adjudication" of Arefi's application or compel the defendants "to perform their duty to adjudicate [Arefi's] Application immediately." *Id.* at 11.

The defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. ECF 15. The defendants' motion is fully briefed. ECF 15-1, 16, 17. A hearing is not necessary.

*See* Loc. R. 105.6 (D. Md. 2023). While the motion was pending, the Court directed the parties to file a joint report on the status of Arefi's visa application. ECF 18. The parties confirmed that his application is still refused and remains in administrative processing. ECF 19.

## II. Standard of Review

### A. Rule 12(b)(1)

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the Court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "Federal courts are courts of limited jurisdiction[,]" possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The plaintiff, as the party asserting jurisdiction, bears the burden of establishing it. *Id.* Where, as here, the defendants contest subject matter jurisdiction "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper"—a facial challenge to jurisdiction—the plaintiff "is afforded the same procedural protections as []he would receive under a Rule 12(b)(6) consideration[.]" *Durden*, 736 F.3d at 300 (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)) (internal quotation marks omitted). Dismissal for lack of subject matter jurisdiction is proper "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799 (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

### B. Rule 12(b)(6)

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have

pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore County*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

### III. Discussion

The defendants argue the Court does not have subject matter jurisdiction over the plaintiffs' claim because the plaintiffs have not identified a clear, nondiscretionary duty to act—a jurisdictional prerequisite for APA relief. The Court agrees.

### A. The APA

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). But the APA "does not provide judicial review for everything done by an administrative agency." *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004) (quoting *Hearst Radio v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948)). Indeed, a court has subject matter jurisdiction over a § 706(1) claim only "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *see also City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 432 (4th Cir. 2019) ("Just like the traditional mandamus remedy from which [5 U.S.C. § 706(1)] is derived, claims to compel agency action are 'limited to enforcement of a specific, unequivocal command,' over which an official has no discretion." (quoting *Norton*, 542 U.S. at 63)); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) (dismissing for lack of jurisdiction APA action for unreasonable delay because "the agency was not *required* to adjudicate" plaintiffs' applications); *Lovo v. Miller*, 107 F.4th 199, 217 (4th Cir. 2024) (dismissing for lack of jurisdiction APA action to compel USCIS adjudication of immigration application because there was no clear duty to act). "[W]here an agency is not required to do something," a

court may not "compel the agency to act—let alone to act faster." *Gonzalez*, 985 F.3d at 366 (emphasis omitted).

To determine whether an agency must act, a court considers the text of the relevant statutes and regulations. *See Lovo*, 107 F.4th at 211–12 (4th Cir. 2024) ("A regulation can mandate action even if a statute does not."). The INA requires that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). For immigrant visa applications, the INA imposes the same requirement: They "shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). "Courts are split on whether there is a mandatory duty," under the INA, "to review and adjudicate" immigrant and nonimmigrant visa applications. *See Iqbal v. Blinken*, No. 2:23-CV-01299, 2023 WL 7418353, at *6 (E.D. Cal. Nov. 9, 2023) (noting *Kassem v. Blinken*, No. 1:21-cv-01400, 2021 WL 4356052, at *5 (E.D. Cal. Sept. 24, 2021), held § 1202(b) imposes a "clear duty" to adjudicate an immigrant visa application under § 1202(b) and collected cases, whereas *Mueller v. Blinken*, 682 F. Supp. 3d 528, 535 (E.D. Va. 2023), held there was "no clear duty under § 1202(b)" and collected cases); *see also Mahmoodi v. Altman-Winans*, No. 24-2010, 2025 WL 763754, at *4 (D.D.C. Mar. 11, 2025) (discussing whether § 1202(d) created a nondiscretionary duty but declining to decide the issue). The Court need not determine whether § 1202(d), on its own, imposes a nondiscretionary duty to adjudicate a nonimmigrant visa application because the statute does not operate on its own.

One of the INA's implementing regulations dictates how a consular officer "adjudicate[s]" a nonimmigrant visa application. *See* 8 U.S.C. § 1202(d); 22 C.F.R. § 41.121(a). "When a [nonimmigrant] visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the

visa." 22 C.F.R. § 41.121(a). The refusal of a nonimmigrant visa application "must be based on legal grounds, such as . . . INA § 221(g)." *Id.* Thus, the regulations specify three—and only three—actions an officer must take to adjudicate a nonimmigrant visa application: issue the visa, refuse the visa, or discontinue granting the visa. *See id.* This regulation and § 1202(d) create a duty to adjudicate a nonimmigrant visa application. *See Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 99 (D.D.C. 2024) (finding § 1202(d) and § 41.121(a) create "a discrete, nondiscretionary [duty] to adjudicate visa applications"); *Farahani v. Laitinen*, No. 1:23CV922, 2025 WL 360833, at *3 (M.D.N.C. Jan. 31, 2025) (same); *Ameer v. Schofer*, No. 1:23-cv-03066, 2024 WL 2831464, at *4 (D.D.C. June 4, 2024) (same); *Aslam v. Heller*, No. 1:23cv971, 2024 WL 3535389, at *3 (M.D.N.C. July 23, 2024) (finding § 1202(b), along with § 41.121(a) and other implementing regulations, impose on the government "a discrete, nondiscretionary duty to grant or to refuse visa applications"), *report and recommendation adopted*; *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 260 (E.D.N.C. 2024) (finding analogous immigrant visa regulation creates a "discrete, nondiscretionary duty" "to either 'issue the visa' or 'refuse the visa'" (quoting 22 C.F.R. § 42.81(a))).

After the officer has issued the visa, refused the visa, or discontinued granting the visa, their duty to adjudicate a nonimmigrant visa application has been satisfied. Sakhi and Arefi admit that the consular officer refused Arefi's visa application pursuant to § 221(g). ECF 12, ¶ 4; ECF 12-1, at 1. They even attached a copy of the refusal worksheet Arefi received after his interview, confirming that Arefi's visa application was refused due to his ineligibility under § 221(g). *See* ECF 12-1, at 1. Thus, the consular officer complied with their duty to adjudicate Arefi's visa application.

9

State Department guidance allows consular officers to, in their discretion, after a visa has been refused, accept additional evidence from the applicant, place the application in a period of administrative processing, and readjudicate the application. *See* 9 FAM § 306.2-2(A)(a)(2). That is what happened here: After refusing the visa application, the consular officer invited Arefi to submit additional information and placed his application in administrative processing. No decision based on the additional information has been made. Sakhi and Arefi argue that the defendants have a duty to readjudicate Arefi's application in light of the additional information Arefi submitted. In their view, the defendants have not yet issued a "final decision . . . regarding Plaintiff Arefi's admissibility." *See* ECF 16, at 11.

Sakhi and Arefi are incorrect. The consular officer satisfied their nondiscretionary duty to adjudicate Arefi's application when they refused his visa application due to his ineligibility under § 221(g). Even though the consular officer exercised his discretion to allow Arefi to submit additional evidence, the officer had no obligation to accept the additional information, and the officer does not have a nondiscretionary duty to issue another decision on Arefi's visa application. Sakhi and Arefi disagree. They argue that three different statutes create a nondiscretionary duty to readjudicate Arefi's visa application. They are mistaken.

First, Sakhi and Arefi argue that § 555(b) of the APA mandates further agency action. Section 555(b) states, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). But this general directive is no "specific, unequivocal command" from Congress to "take a *discrete* agency action." *See Norton*, 542 U.S. at 63–64. Instead, § 555(b) "merely restates a principle of good administration." Attorney General's Manual on the Administrative Procedure Act 65 (1947); *see also Hi-Tech Pharmacal Co. v. U.S. Food &*

10

*Drug Admin.*, 587 F. Supp. 2d 1, 9 (D.D.C. 2008) ("[T]he general directive of Section 555(b) is a far cry from the 'discrete agency action' that courts require when issuing an order compelling agency action 'unlawfully withheld or unreasonably delayed'" (quoting *Norton*, 542 U.S. at 63)).

Several courts have concluded that § 555(b) does not impose a duty on consular officers to review or readjudicate a visa application after refusing it. *See, e.g.*, *Turner v. Blinken*, No. RDB-24-318, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024) ("5 U.S.C. § 555(b) cannot support jurisdiction under the APA § 706(1)."); *Ishaq v. Schofer*, No. TJS-24-207, 2024 WL 3729107, at *5 (D. Md. Aug. 8, 2024) (rejecting argument that § 555(b) created duty to adjudicate visa application); *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *4 (D.C. Cir. July 24, 2024) (per curiam) ("Section 555(b) does not in any way dictate how the agency can handle [a visa applicant's] rejected paperwork after a decision has been made."); *Yaghoubnezhad*, 734 F. Supp. 3d at 102 ("While [§ 555(b)] implies that the agency, at some point, must reach a final decision, it 'does not speak specifically to the duties of consular officers, and it uses the open-ended phrase within a reasonable time.'" (quoting *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *6 n.5 (D.D.C. Feb. 7, 2024))); *Ali v. U.S. Dep't of State*, 676 F. Supp. 3d 460, 470 (E.D.N.C. 2023) (holding that § 555(b) did not create a "specific, nondiscretionary" duty to adjudicate visa application); *Ramizi v. Blinken*, 745 F. Supp. 3d at 262 ("Section 555(b) does not identify a discrete agency action; by its plain terms, it applies to *every* agency action."). This Court agrees with these decisions. Section 555(b) does not create a nondiscretionary duty to do anything, let alone a duty to consider the additional information Arefi submitted and readjudicate his visa application.

Next, the plaintiffs argue INA § 221, 8 U.S.C. § 1201, creates a nondiscretionary duty to act. Section 221 of the INA grants consular officers the authority to issue immigrant and nonimmigrant visas. 8 U.S.C. § 1201(a). Section 221 governs the registration of visa applicants,

11

filing requirements and fee waivers, the period of a visa's validity, the replacement of visas, the surrender of the applicant's visa and other documents when the applicant enters the United States, the right to not admit a visa holder to the United States, and the revocation of visas. *See id.* § 1201(b)–(f), (h)–(i). Section 221 also provides that "[n]o visa or other documentation shall be issued to a [noncitizen] if . . . the consular officer knows or has reason to believe that such alien is ineligible to receive a visa[.]" *Id.* § 1201(g). Subsection (g) of § 221 was the basis for the refusal of Arefi's visa. Nothing in § 221 creates a nondiscretionary duty to consider additional information and issue another decision on a refused visa application.

Finally, the plaintiffs suggest the nondiscretionary duty to act is found in the Foreign Relations Authorization Act of 2003, Pub. L. No. 107-228, 116 Stat. 1373 (2002). They do not specify what statutory language they believe imposes a duty to readjudicate Arefi's visa application. Perhaps they are relying on this language: "It shall be the policy of the Department to process each visa application from an alien classified as an immediate relative or as a K-1 nonimmigrant within 30 days of the receipt of all necessary documents from the applicant and [USCIS]." Pub. L. No. 107-228, § 233. But as the plaintiffs admit, this language is merely "precatory." *See* ECF 16, at 10. Precatory language does not create a binding duty. "By prefacing the instruction with '[it] shall be the *policy* of the Department,' Congress did not intend to create a binding duty." *Mueller v. Blinken*, 682 F. Supp. 3d at 536 (internal citation omitted). Several other courts have found similar policy language does not create a nondiscretionary duty to act. *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020) (holding that similar policy language in another appropriations bill did not create a mandatory deadline for adjudication of visa applications); *Poursohi v. Blinken*, No. 21-cv-01960, 2021 WL 5331446, at *8 (N.D. Cal. Nov. 16, 2021) (stating that similar language in an earlier Foreign Relations Authorization Act "contains

only a precatory timeframe and thus creates no enforceable rights on behalf of applicants"). The policy language in the Foreign Relations Authorization Act merely states Congress's aspiration that the State Department process a K-1 visa application within 30 days of receipt. It does not create a nondiscretionary duty to readjudicate a refused nonimmigrant visa application.

Unable to identify a specific statute or regulation that creates a nondiscretionary duty to act, Sakhi and Arefi argue "that the statutory framework and procedural rules imply a duty to follow through with proper adjudicative steps." ECF 16, at 10. Yet they do not identify where in the "statutory framework" or the "procedural rules" the agency has a nondiscretionary duty to act, and they acknowledge that "there may not be an explicit command to re-adjudicate a refused application." *See id*. The Court may not imply a duty to act where none exists.

In sum, a consular officer is required to adjudicate a nonimmigrant visa application by issuing the visa, refusing the visa, or discontinuing the grant of a visa. 22 C.F.R. § 41.121(a); *see* 8 U.S.C. § 1202(d). A consular officer refused Arefi's visa application. Any nondiscretionary duty has been discharged. The consular officer has no duty to readjudicate a refused visa application, even if the officer has chosen, in their discretion, to receive additional information and place the application in a period of administrative processing. Because the defendants did not fail to take a discrete action they were required to take, the Court does not have subject matter jurisdiction over the plaintiffs' APA claim. The claim is dismissed without prejudice.[1]

---

[1] The plaintiffs reference the Mandamus Act, 28 U.S.C. § 1361, in their amended complaint, but they assert only an unreasonable delay claim under APA § 706(1). If the plaintiffs intended to bring a separate claim under the Mandamus Act, as they suggest in their briefing, *see* ECF 16, at 3, "[t]he standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act[.]" *Jahangiri v. Blinken*, No. DKC-23-2722, 2024 WL 1656269, at *14 (D. Md. Apr. 17, 2024) (alterations in original) (quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020)). Because the Court has no jurisdiction over the plaintiffs' APA claim, it lacks jurisdiction over a mandamus claim. *See Ishaq*, 2024 WL 3729107, at *3 (considering APA

13

### B. Remaining Issues

The defendants argue, in the alternative, that the plaintiffs' claim is barred by the doctrine of consular nonreviewability. Because the Court does not have jurisdiction over the plaintiffs' claim, it need not resolve whether the doctrine of consular nonreviewability would bar judicial review over their claim. *See Karimova*, 2024 WL 3517852, at *6 (declining to decide whether the doctrine of consular nonreviewability applied to similar APA claim); *Ishaq*, 2024 WL 3729107, at *5 n.3 (same).

Lastly, the plaintiffs make a passing reference to Sakhi's due process rights in their amended complaint. They allege that the "[d]efendants' delay in this case is . . . in violation of Plaintiff AREFI's U.S. citizen fiancée's due process rights pertaining to her familial choices, and not in accordance with the law." ECF 12, ¶ 43. However, they do not assert a separate constitutional claim in their amended complaint. They assert only an APA claim. In their opposition to the motion to dismiss, they clarify that they did not intend to bring a standalone constitutional claim. They confirm that their only claim "is that the Defendants' conduct— particularly their alleged failure to timely adjudicate the visa application—violates *statutory* requirements governing the processing of visa applications." ECF 16, at 16 (emphasis added). As discussed above, the Court does not have subject matter jurisdiction over the plaintiffs' statutory claim.

---

and mandamus claims together); *Parva v. Blinken*, Civ. No. TDC-23-3287, 2024 WL 4042466, at *3 (D. Md. Sept. 4, 2024) (same).

## IV. Conclusion

The defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is granted. The Court lacks subject matter jurisdiction over the plaintiffs' claim. Their claim is dismissed without prejudice. A separate order follows.

Date: March 25, 2025

Deborah L. Boardman
United States District Judge